**IN THE COURT OF APPEALS OF IOWA**

No. 15-0214
Filed March 25, 2015

**IN THE INTEREST OF M.M.,**
**Minor Child,**

**L.M., Mother,**
　　Appellant.

_____

　　Appeal from the Iowa District Court for Jasper County, Thomas W. Mott,

Judge.

　　A mother appeals from the order terminating her parental rights.

**AFFIRMED.**

　　Jane Odland of Odland Law Firm, P.L.L.C., Newton, for appellant mother.

　　Thomas J. Miller, Attorney General, Kathrine Miller-Todd, Assistant

Attorney General, Michael K. Jacobsen, County Attorney, and Jonathan Noble,

Assistant County Attorney, for appellee State.

　　Larry Pettigrew of Pettigrew Law Firm, P.C., Newton, for minor child.

　　Considered by Danilson, C.J., and Potterfield and Bower, JJ.

**DANILSON, C.J.**

A mother appeals the termination of her parental rights to her child, M.M.[1] The mother has had her parental rights terminated to each of her previous seven children and was in police custody at the time of the termination hearing pending charges of willful injury and attempted murder. On appeal, she does not dispute the statutory ground for termination has been met pursuant to Iowa Code section 232.116(1)(g) (2015). She maintains the juvenile court should have awarded her an additional six months to work towards unification. Also, she maintains termination of her parental rights would be detrimental to M.M. because of the closeness of their relationship. Because we cannot say the conditions that led to removal would no longer exist if the mother was granted a six-month extension and the record does not support the mother's assertion regarding the parent-child bond, we affirm the juvenile court's order terminating the mother's parental rights.

**I. Background Facts and Proceedings.**

M.M. was born in April 2014. Although the mother carried him to full-term, he was born weighing less than four pounds. Additionally, he was born with hydrocephalus, which is a build-up of fluid within the brain. Due to his low birth weight and the mother's history[2] with the Iowa Department of Human Services (DHS), a child in need of assistance (CINA) assessment was completed on April 8, 2014.

---

[1] The parental rights of the biological father have also been terminated. He does not appeal.

[2] The mother had her parental rights terminated to three children in Iowa in April 2004. Her parental rights to three other children were terminated in Pennsylvania in April 2013. Most recently, her parental rights to her child, C.M., were terminated in Iowa in December 2013.

On May 1, 2014, the juvenile court held a removal hearing while M.M. was still in the neonatal intensive care unit (NICU). On May 5, 2014, the court removed M.M. from the mother's custody.

On May 19, 2014, M.M. was adjudicated a CINA pursuant to Iowa Code sections 232.2(6)(b),(c)(2), and (n) (2013).

The mother received three visits per week with M.M. while he was in the NICU. M.M. was released from the NICU on June 13, 2014 and placed with a foster family. The family had previously adopted his biological brother, C.M., after the mother's parental rights were terminated in December 2013. M.M. had a number of ongoing medical concerns requiring him to see doctors and specialists often—up to three times per week. He required a gastric tube for feeding in order to prevent aspiration of formula.

The mother did not attend any visits with M.M. between August 7 and November 19, 2014. She initially claimed she was sick and unable to attend visits. She later claimed her car broke down, preventing her from getting to visits, and her cell phone was stolen, preventing her from setting up other visits or requesting help with transportation.

The State filed a petition to terminate the mother's parental rights, and a hearing was held on the matter on December 9, 2014. At the hearing, two different DHS caseworkers, a family safety, risk, and permanency (FSRP) worker, and the mother's para-educator testified that the mother and M.M. did not have a strong bond. An officer testified the mother was currently in police custody pending charges of willful injury and attempted murder. The mother also testified. She admitted she still smokes cigarettes. She testified to her own

disability from spinal deterioration, which prevents her from being able to walk sometimes and will likely confine her to a wheelchair within a few years. She also suffers from anxiety and a sleep disorder stemming from a methamphetamine lab that blew up in her home and injured two men approximately thirteen years ago. The mother does not have a car or a driver's license, but she testified she had family members who could help her get M.M. to his medical appointments if he was in her care. The mother admitted she does not know how to feed M.M. using his gastric tube, but she maintains she was never given the opportunity to learn to do so. The mother did not dispute that M.M. could not be returned to her care at the time of the termination hearing as she was in jail at the time.

The foster mother testified she was bonded with M.M. and stated that she and her husband intended to adopt M.M. if the mother's parental rights were terminated.

On January 22, 2015, the juvenile court filed an order terminating the mother's parental rights to M.M. pursuant to Iowa Code section 232.116(1)(g) and (h). The mother appeals.

**II. Standard of Review.**

Our review of termination decisions is de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We give weight to the juvenile court's findings, especially assessing witness credibility, although we are not bound by them. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). An order terminating parental rights will be upheld if there is clear and convincing evidence of grounds for termination under section 232.116. *Id.* Evidence is "clear and convincing" when there are no

serious or substantial doubts as to the correctness of the conclusions of law drawn from the evidence. *Id.*

## III. Discussion.

### A. Extension.

The mother contends she should have been given a six-month extension to pursue reunification with M.M., pursuant to Iowa Code section 232.104(2)(b). She maintains that could meet M.M.'s needs if given additional time.

The mother had only two visits with M.M. between August 7, 2014 and the time of the termination hearing in December. She admitted that she did not know how to feed M.M. using his gastric tube. Although she claimed family members would help transport M.M. to his many medical appointments, the same family members were apparently either unwilling or unable to transport her to visits after her car broke down. Additionally, the mother was in police custody pending the criminal charges of willful injury and attempted murder at the time of the termination hearing.

Children should not be forced to wait for their parent to be able to care for them, particularly when we have so little evidence to rely upon to believe the circumstances will be different in six months. *See In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct .App. 1998). We agree with the district court that the extension is not warranted, and we consider whether the grounds for termination have been met.

### B. Grounds for Termination.

Iowa Code chapter 232 termination of parental rights follows a three-step analysis. *P.L.*, 778 N.W.2d at 39. The court must first determine whether a

ground for termination under section 232.116(1) has been established. *Id.* If a ground for termination has been established, the court must apply the best-interest framework set out in section 232.116(2) to decide if the grounds for termination should result in termination of parental rights. *Id.* Finally, if the statutory best-interest framework supports termination of parental rights, the court must consider if any of the statutory exceptions set out in section 232.116(3) weigh against the termination of parental rights. *Id.*

Although the juvenile court terminated the mother's parental rights on two grounds, the mother only disputes one of those grounds, section 232.116(1)(h). When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the order on any ground we find supported in the record. *D.W.*, 791 N.W.2d at 707. The mother's failure to raise the remaining statutory ground for termination waives any claim of error related to that ground. *See Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996) ("[O]ur review is confined to those propositions relied upon by appellant for reversal on appeal.").

There is clear and convincing evidence the ground for termination of the mother's parental rights to M.M. has been met pursuant to section 232.116(1)(g).

In determining the best interests of the child, we give primary consideration to "the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional conditions and needs of the child." *See* Iowa Code § 232.116(2). The foster mother is bonded with M.M., and the foster family is capable of meeting his medical needs. Additionally, termination will enable M.M. to achieve permanency. The foster family has already adopted M.M.'s biological brother

and intends to adopt M.M. as well. *See In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014) (citing *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (noting the "defining elements in a child's best interest" are the child's safety and her "need for a permanent home")). We conclude termination is in M.M.'s best interests.

Iowa Code section 232.116(3) provides that "[t]he court need not terminate the relationship between the parent and child" under certain circumstances. A finding under subsection 3 allows the court not to terminate. *See P.L.*, 778 N.W.2d at 39. The factors weighing against termination in section 232.116(3) are permissive, not mandatory, and the court may use its discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship. *In re A.M.,* 843 N.W.2d 100, 113 (Iowa 2014). The mother contends terminating the parent-child relationship would be detrimental to M.M. due to the closeness of the parent-child relationship, pursuant to section 232.116(3)(c). However, two DHS caseworkers, the FSRP provider, and the mother's para-educator testified there was not a strong bond between M.M. and his mother. Additionally, M.M. was only eight months old at the time of the termination hearing, and the mother had attended just two visits between August 7 and December 19, 2014. We acknowledge the mother loves M.M., but we do not believe the permissive factor makes termination unnecessary in light of M.M.'s need for permanency.

**IV. Conclusion.**

Because we cannot say the conditions that led to removal would no longer exist if the mother was granted a six-month extension, and the evidence in the record does not support the mother's assertion regarding the child's bond with her, we affirm the juvenile court's order terminating the mother's parental rights.

**AFFIRMED.**